UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASTRA VEDA CORPORATION (*f/k/a* WORLDFLIX, INC.),<br><br>*Plaintiff,*<br><br>v.<br><br>APOLLO CAPITAL CORP., APOLLO MANAGEMENT GROUP, INC., and YOHAN NARAINE,<br><br>*Defendants*. | CIVIL ACTION NO. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff[1] Astra Veda Corporation, by and through its undersigned counsel, states for its Complaint against Defendants Apollo Capital Corporation, Apollo Management Group, Inc., and Yohan Naraine, as follows:

**NATURE OF THE ACTION**

1. Apollo is an "enterprise" under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962, *et seq.,* because it engages in the collection of unlawful debts at the direction and control of Defendant Naraine.

2. The loans created pursuant to the Agreements[2] are criminally usurious because they

---

[1] The following terms are used herein: Astra Veda Corporation ("Plaintiff" or "Astra Veda"); Defendant Apollo Capital Corporation ("Defendant" or "Apollo" or "Enterprise"); Defendant Apollo Management Group, Inc. ("Apollo Management"); Defendant Yohan Naraine ("Naraine") ( collectively, the "Defendants").

[2] "Agreements" are defined as the documents executed by Plaintiff in favor of Apollo. Specifically: (1) Joann Deichman, an individual, purchased two Convertible Promissory Notes from Astra Veda, doing business as WorldFlix, Inc. The first note was issued on December 10, 2012 with an outstanding balance of $25,000.00 plus accrued and unpaid interest. The second note was issued on March 3, 2013 with an outstanding balance of $7,500.00 plus accrued and unpaid interest. On August 12, 2015, Deichman consolidated and assigned these two notes to Apollo, under which Apollo purchased an Amended and Restated Convertible Promissory Note ("August 2015 Note") in the amount of

1

reserved and imposed charges in excess of the maximum enforceable rate of interest—25% per annum—allowed by New York state law.  *See* N.Y. Penal Law § 190.40.[3]

---

$32,500.00 and an accrued interest balance of $11,262.50, bearing a 18% stated interest rate;  (2) on October 28, 2015, Apollo and Astra Veda, doing business as WorldFlix, Inc., entered into a Convertible Promissory Note ("October 2015 Note"), under which Apollo purchased from Astra Veda in the amount of $10,000.00 bearing a 12% stated interest rate;  (3) on November 3, 2014, Jaymee Swain, an individual, purchased a Convertible Promissory Note from Astra Veda, doing business as WorldFlix, Inc.  On November 24, 2015, Swain assigned this note to Apollo, under which Apollo purchased an Amended and Restated Convertible Promissory Note ("November 2015 Note") in the amount of $15,000.00 plus accrued and unpaid interest, bearing a 5% stated interest rate.  On December 18, 2015, the parties executed an amendment to the November 2015 Note ("November 2015 Amendment (1)"), which modified the definition of "prepayment," limiting prepayment to 50% of the outstanding November 2015 Note principal and adding the prepayment penalties table.  On January 12, 2016, the parties executed an amendment to the November 2015 Note ("November 2015 Amendment (2)"), revoking the borrower's right to prepayment entirely;  (4) on December 22, 2015, Apollo and Astra Veda doing business as WorldFlix, Inc., entered into a Convertible Promissory Note ("December 2015 Note"), under which Apollo purchased from Astra Veda in the amount of $12,500.00 bearing a 12% stated interest rate;  (5) on January 12, 2016, Apollo and Astra Veda doing business as WorldFlix, Inc., entered into a Convertible Promissory Note ("January 2016 Note"), under which Apollo purchased from Astra Veda in the amount of $15,000.00 bearing a 12% stated interest rate; (6) on February 9, 2016, Apollo and Astra Veda doing business as WorldFlix, Inc., entered into a Convertible Promissory Note ("February 2016 Note"), under which Apollo purchased from Astra Veda in the amount of $10,000.00 bearing a 12% stated interest rate;  (7)  on March 18, 2010, Joann Deichman, an individual, purchased a Convertible Promissory Note from Astra Veda, doing business as WorldFlix, Inc.  On March 18, 2016, Deichman assigned this Note to Apollo, under which Apollo purchased an Amended and Restated Convertible Promissory Note ("March 2016 Note") in the amount of $15,000.00 and an accrued interest balance of $19,695.01, bearing a 15% stated interest rate.  On April 6, 2016, the parties executed an amendment to the March 2016 Note ("March 2016 Amendment"), which modified the original conversion price to a 40% discount; (8) on April 11, 2016, Apollo and Astra Veda doing business as WorldFlix, Inc., entered into a Convertible Promissory Note ("April 2016 Note"), under which Apollo purchased from Astra Veda in the amount of $110,000.00 bearing a 12% stated interest rate.  On December 5, 2016, the parties executed an amendment to the April 2016 Note ("April 2016 Amendment"), which modified the original conversion price to a 60% discount; (9) on February 6, 2018, Apollo and Astra Veda doing business as WorldFlix, Inc., entered into a Convertible Promissory Note ("February 2018 Note"), under which Apollo purchased from Astra Veda in the amount of $71,666.67 bearing a 12% stated interest rate; and (10) on July 15, 2019, Apollo and Astra Veda doing business as WorldFlix, Inc., entered into a Common Stock Purchase Warrant ("July 2019 Warrant"), under which Apollo purchased from Astra Veda a warrant of up to 1% of the outstanding Shares at the time of exercise, "at 0.001 cent per share or current market share price with a 95% discount, whichever is higher".  The August 2015 Note, October 2015 Note, November 2015 Note, December 2015 Note, January 2016 Note, February 2016 Note, March 2016 Note, April 2016 Note, and February 2018 Note are referred to collectively herein as the "Notes."  A true and correct copy of each of the Notes, July 2019 Warrant, and accompanying transaction documents are attached as follows: (1) August 2015 Note as **Exhibit 1**; (2) October 2015 Note as **Exhibit 2**; (3) November 2015 Note, November 2015 Amendment (1), and November 2015 Amendment (2) as **Exhibit 3**; (4) December 2015 Note as **Exhibit 4**; (5) January 2016 Note as **Exhibit 5**; (6) February 2016 Note as **Exhibit 6**; (7) March 2016 Note and March 2016 Amendment as **Exhibit 7**; (8) April 2016 Note and April 2016 Amendment as **Exhibit 8**; (9) February 2018 Note as **Exhibit 9**, and (10) July 2019 Warrant as **Exhibit 10**.   Upon information and belief, pursuant to a Security Agreement, there are at least six additional Convertible Promissory Notes.

[3]  Under N.Y. Penal Law § 190.40, "[a] person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period.  Criminal usury in the second degree is a class E felony."

3. As detailed below, the Agreements reserved a stated interest rate of 5-18% per annum and a 40-90% discount at conversion, resulting in total interest rates ranging from **68.51% to 2,000% A.P.R.**

4. Accordingly, among other relief, Astra Veda seeks treble damages under RICO because the amount of interest charged by Apollo is **more than 2.74 to 80 times the maximum enforceable rate** of interest allowed by New York law.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiff is asserting a claim under RICO.

6. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(2). Plaintiff is a citizen of Wyoming, Defendants Apollo and Apollo Management are New York corporations with their principal place of business at 7050 Aloma Avenue, Winter Park, Florida 32792, and upon information and belief, Defendant Naraine is a Florida citizen. Moreover, the amount in controversy exceeds $75,000.00.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because Defendants Apollo and Apollo Management are incorporated in New York, and because a substantial part of the events giving rise to this action occurred in this District.

8. Venue is also proper in this Court because the Agreements each expressly contain a forum selection clause that states any action brought by either party concerning the transactions contemplated by the Agreements must be brought in New York state courts or in federal courts located in the State of New York.

## PARTIES

9. Plaintiff Astra Veda is incorporated under the laws of the State of Wyoming, with

its principal place of business at 12361 East Cornell Avenue, Aurora, Colorado 80014.

10. Defendant Apollo is incorporated under the laws of the State of New York, with its principal place of business at 7050 Aloma Avenue, Winter Park, Florida 32792.

11. Defendant Apollo Management is incorporated under the laws of the State of New York, with its principal place of business at 7050 Aloma Avenue, Winter Park, Florida 32792. Upon information and belief, Apollo Management controls all of Apollo's operations.

12. Defendant Naraine is and was during all relevant times, a managing member of Apollo and Apollo Management. Upon information and belief, Defendant Naraine resides in Miami-Dade County, Florida.

## FACTUAL ALLEGATIONS

### I. APOLLO CAPITAL CORPORATION

13. Through Naraine, Apollo exists for the purpose of lending money using the business model described herein.

14. Upon information and belief, Naraine has authorized and directed Apollo to enter into numerous convertible promissory notes and other alternative securities transactions with public companies subject to New York law.

15. Upon information and belief, the interest rates Apollo charged on these transactions often exceeded the lawful amount permitted under New York law, the collection of which results in an ongoing business of unlawful debt collection.

16. Upon information and belief, the interest rates Apollo charged on these transactions often exceeded at least twice the maximum enforceable rate permitted under New York law, the collection of which results in an ongoing business of unlawful debt collection in violation of RICO. 28 U.S.C. § 1962(c).

II. **DEFENDANTS' BUSINESS MODEL AS APPLIED TO PLAINTIFF**

*Defendants Entered Into
Agreements That are Usurious and
Unenforceable Under New York Law*

17. The Agreements state that they are governed by New York law.

18. Pursuant to its typical business model, the Agreements provide Apollo with a conversion option; that is, an option to take repayment by exchanging the debt for shares of company stock.

19. Consistent with its usual practice, Apollo did not exchange the debt on a dollar-for-dollar basis, but instead at a substantial discount to the market price at the time of conversion—in this case between a 10% and 95% conversion discount.

20. The New York Court of Appeals has recently concluded that for securities of this type, the value conveyed by the conversion discount must be included in the interest calculation for purposes of assessing compliance with the New York usury laws.[4]

21. Since Apollo's initial loan in 2015 (the August 2015 Note) to Astra Veda, Apollo has engaged in a systematic and deliberate course of unlawful lending and collections against Astra Veda in a continuing scheme to provide and collect on unlawful lending that commenced on August 2015, and continued though to its last collection of unlawful debt against Astra Veda in November 2018. In addition to the Notes and the numerous conversions made by Apollo on the Notes, the November 2019 Warrant was additional consideration to perpetuate this unlawful debt collecting scheme.

22. By collecting under the Agreements that charge more than double the maximum rate of interest set forth under 18 U.S.C. § 1961(6) and N.Y. Penal Law § 190.40, Defendants

---

[4] *Adar Bays, LLC v GeneSYS ID, Inc.,* 179 N.E.3d 612, 614-615 (N.Y. 2021).

have engaged in the following collection of unlawful debts:

    a. pursuant to the August 2015 Note, Defendants collected/charged a **204%**[5] A.P.R. interest rate based on the Loan of $32,500.00;

    b. pursuant to the October 2015 Note, Defendants collected/charged a **1,812%**[6] A.P.R. interest rate based on the Loan of $10,000.00;

    c. pursuant to the November 2015 Note, Defendants collected/charged a **905%**[7] A.P.R. interest rate based on the Loan of $15,000.00;

    d. pursuant to the December 2015 Note, Defendants collected/charged a **1,812%**[8] A.P.R. interest rate based on the Loan of $12,500.00;

    e. pursuant to the January 2016 Note, Defendants collected/charged a **312%**[9] A.P.R. interest rate based on the Loan of $15,000.00;

    f. pursuant to the February 2016 Note, Defendants collected/charged a **478%**[10] A.P.R. interest rate based on the Loan of $10,000.00;

    g. pursuant to the March 2016 Note, Defendants collected/charged a **68.51%**[11] A.P.R.

---

[5] Calculated as follows: Step 1: 65/35 = 1.86 or 186% (Conversion Discount); Step 2: 186% (Conversion Discount) + 18% A.P.R (Stated Interest) = **Total 204% A.P.R. Interest Rate.**

[6] Calculated as follows: Step 1: 90/10 = 9 or 900% X 12/6 = 1,800% (Conversion Discount); Step 2: 1800% (Conversion Discount) + 12% A.P.R (Stated Interest) = **Total 1,812% A.P.R. Interest Rate.**

[7] Calculated as follows: Step 1: 90/10 = 9 or 900% (Conversion Discount); Step 2: 900% (Conversion Discount) + 5% A.P.R (Stated Interest) = **Total 905% A.P.R. Interest Rate.**

[8] Calculated as follows: Step 1: 90/10 = 9 or 900% X 12/6 = 1,800% (Conversion Discount); Step 2: 1,800% (Conversion Discount) + 12% A.P.R (Stated Interest) = **Total 1,812% A.P.R. Interest Rate.**

[9] Calculated as follows: Step 1: 60/40 = 1.5 or 150% X 12/6 = 300% (Conversion Discount); Step 2: 300% (Conversion Discount) + 12% A.P.R (Stated Interest) = **Total 312% A.P.R. Interest Rate.**

[10] Calculated as follows: Step 1: 70/30 = 2.33 or 233% X 12/6 = 466% (Conversion Discount); Step 2: 466% (Conversion Discount) + 12% A.P.R (Stated Interest) = **Total 478% A.P.R. Interest Rate.**

[11] Calculated as follows: Step 1: 40/60 = .67 or 67% X 365/457 = 53.51% (Conversion Discount); Step 2: 53.51% (Conversion Discount) + 15% A.P.R (Stated Interest) = **Total 68.51% A.P.R. Interest Rate.**

interest rate based on the Loan of $15,000.00;

h. pursuant to the April 2016 Note, Defendants collected/charged a **312%**[12] A.P.R. interest rate based on the Loan of $110,000.00;

i. pursuant to the February 2018 Note, Defendants collected/charged a **322.00%**[13] A.P.R. interest rate based on the Loan of $71,666.67; and

j. pursuant to the July 2019 Warrant, Defendants exercise price was either 0.0001 cent per share of common stock, or the current market share price with a 95% discount, whichever was higher. Therefore, at the very least, the Defendants collected/charged a **2,000%**[14] A.P.R. interest rate based on the warrant.

23. The Agreements create an unlawful debt under RICO because the terms were imposed by Apollo—which is in the business of lending money—at total interest rates of **68.51% to 2,000% A.P.R.**, with each substantially in excess of the maximum lawful rate. Under the Agreements, Astra Veda was obligated to repay the money loaned, either in cash or in stock.

24. As consideration for the loans of an aggregate amount of $220,000.00, Apollo took as repayment **$4,148,647.64** worth of cash and stock, **18.86 times the aggregated amount of the loan** on an annualized basis.

---

[12] Calculated as follows: Step 1: 60/40 = 1.5 or 150% X 12/6 = 300% (Conversion Discount); Step 2: 300% (Conversion Discount) + 12% A.P.R (Stated Interest) = **Total 312% A.P.R. Interest Rate.**

[13] Calculated as follows: Step 1: 75/25 = 3.00 or 300% (Conversion Discount); Step 2: ($7,166.67 (OID) / $71,666.67 = .10 or 10% (OID Interest); Step 3: 300% (Conversion Discount) + 12% A.P.R (Stated Interest) + 10% (OID Interest)) = **Total 322.00% A.P.R. Interest Rate.**

[14] With regard to the July 2019 Warrant, the 95% discount means, for example, that if the stock price is $1.00, Apollo would receive warrant shares as if its price were only 5 cents per share. So, a $5 exercise would be paid with 100 shares (with a baseline fair market value) worth $100 (or $1.00 per share), and a $100 exercise is repaid with 2,000 shares or $2,000 worth of stock (trading at $1.00 per share $0.05 per share with discount = $20.00 worth of stock at a dollar a share).

25.     As demonstrated by the Agreements, and the additional transactions with other issuers alleged above, Defendants are engaged in the business of lending money as part of its regular business.

26.     Pursuant to New York's usury laws, the maximum enforceable rate for a loan to a corporation is 25% per annum.[15]

27.     The fixed conversion discount, such as the ones provided to the Defendants in the Agreements, *is interest that must be considered when calculating the true interest rate for usury analysis*.[16]

28.     The Agreements reserved and imposed a stated interest rate between **5-18**% per annum, and a **10-95%** discount floating conversion rate, *which is* **more than 2.74 to 80** *times greater than the maximum enforceable rate* permitted by New York's criminal usury law.

29.     Beginning on December 27, 2015, Apollo submitted conversions under *eight separate Notes*, pursuant to which Apollo received 4,943,303,759 *newly-issued Astra Veda common stock* in repayment of the loan.

30.     Each of these conversions is a separate collection of unlawful debt.

31.     Pursuant to those eight Notes, Apollo converted upwards of $179,785.18 worth of principal and $103,834.12 worth of interest. At or about the time of each conversion stated above, the open market value of the 4,943,303,759 newly-issued Astra Veda securities received by Apollo pursuant to the conversions was approximately **$4,148,647.64**.

32.     Each conversion exercised is an unlawful collection of debt. *See* 28 U.S.C. § 1961(6).

### *Defendant Naraine Directs and Controls Apollo's*

---

[15] *See* N.Y. Penal Law § 190.40.

[16] *See Adar Bays*, 179 N.E.3d at 625.

*Convertible Debt Securities Business*

33. At all relevant times, Defendant Naraine, acting as Apollo's sole managing member and dominant shareholder, directly possessed and exercised control over Apollo, including the power to decide whether to enter into agreements (including the Agreements in this case), to negotiate and approve the final deal terms, and to direct its sale of stock.

34. Defendant Naraine negotiated the terms of the Agreements and convertible notes that Apollo purchased from Astra Veda, as well as any amendments to the original terms. Upon information and belief, Defendant Naraine negotiates agreements and convertible notes that Apollo purchases from other microcap companies as well.

35. Ultimately, Defendant Naraine was, and still remains, the sole person holding the power to direct, authorize, and compel Apollo to enter into, convert, and subsequently sell securities through convertible notes with issuers, including the Notes with Astra Veda.

*Astra Veda was Harmed by Apollo's*
*Unlawful Debt Collections*

36. As a result of Apollo's unlawful debt collections, Astra Veda and its shareholders have been injured in its business and property.

37. Further, as a result of Apollo's unlawful debt collections, Apollo has obtained four billion shares of free-trading Astra Veda common stock to which it was not entitled nor able to lawfully receive.

38. Apollo's serial conversions and resulting issuances have forced Astra Veda to increase its outstanding shares, resulting in massive dilutions to Astra Veda's stockholder's holdings.

39. Once Apollo began converting under the Agreements, its immediate and massive selling of large blocks of newly-issued shares of Astra Veda's common stock into the public

market severely depressed Astra Veda's market capitalization and stock price.

40. As a result of these actions, Astra Veda was unable to privately raise money from other entities, with other toxic lenders becoming the only reasonably available option for short-term financing, which ultimately leads to more harm.

41. As a direct and proximate result of the Defendants' unlawful debt collection and violation of 18 U.S.C. § 1962(c), Astra Veda has been injured in its business and property because, among other things; its market capitalization has significantly decreased, its stock has been unlawfully acquired by Defendants, and it has suffered further damage and injury to be proven at trial.

42. All of the harm alleged herein was foreseeable by Apollo, and was directly and proximately caused by Apollo's collection of unlawful debts.

## CAUSES OF ACTION

### COUNT I:

*Conducting the Affairs of the
RICO Enterprise (RICO, § 1962(c))*
(Against All Defendants)

43. Plaintiff repeats, reiterates, and re-alleges each and every allegation of Paragraphs 1 through 42 as set forth herein.

44. Defendant Naraine is a RICO "person" within the meaning of 18 U.S.C. § 1961(3), defined as an individual capable of holding a legal or beneficial interest in property.

45. Defendant Apollo is a RICO "enterprise" within the meaning of 18 U.S.C. § 1962(c).

46. Defendant Naraine agreed to, conducted, and participated in the unlawful conduct of Apollo's affairs through the collection of unlawful debts from Astra Veda; specifically, by collecting and attempting to collect unenforceable debt under New York usury laws because it

accumulated through loans by Apollo that charged, took or received interest at more than double the maximum enforceable legal rate.

47. The Agreements have a minimum effective annual interest rates of 68.51% to 2,000% and are incorporated herein as if set forth at length.

48. At all relevant times Naraine was, and is, a person that exists separate and distinct from the Enterprise.

49. Upon information and belief, because Apollo is in the business of making loans at usurious interest rates, it committed multiple related acts of unlawful debt collection from a plethora of other needy microcap companies throughout the country, pursuant to and in furtherance of its unlawful scheme.

50. Defendant Naraine directly and indirectly conducted and participated in the conduct of Apollo's affairs through the collection of unlawful debts alleged herein, in violation of 18 U.S.C. 1962(c).

51. Naraine is the owner and mastermind of the Enterprise. Naraine is responsible for the day-to-day operations of the Enterprise and has final say on all business decisions of the Enterprise including, without limitation, which usurious loans the Enterprise will fund, how such loans will be funded, and the ultimate payment terms of each usurious loan.

52. Naraine has also taken actions, and directed the Enterprise and/or its agents to take actions necessary to accomplish the overall goals and purposes of the Enterprise including directing the affairs of the Enterprise, funding the Enterprise, directing agents of the Enterprise to collect upon the unlawful loans and executing legal documents in support of the Enterprise.

53. Narain has ultimately benefited from the Enterprise's funneling of the usurious loan proceeds to Apollo and further benefited from the receipt of distributions and payment of salary or commissions by Apollo.

54. Apollo's activities of lending money to corporations nationwide, utilize interstate commerce.

55. As a direct and proximate result of the Defendants' unlawful debt collection and violations of 18 U.S.C. § 1962(c), Astra Veda has been injured in its business and property because, among other things; its market capitalization has significantly decreased, its stock has been unlawfully acquired by the Defendants, and it has suffered further damage and injury to be proven at trial.

## COUNT II:

*Unjust Enrichment*
(Against All Defendants)

56. Plaintiff repeats, reiterates, and re-alleges each and every allegation of Paragraphs 1-55 as set forth herein.

57. Defendants have received valuable benefits from Astra Veda, including, *inter alia*, the stock and profits realized from the sale of the unlawfully issued shares of Astra Veda common stock.

58. These benefits are the result of the wrongful conduct described in Count I and alleged herein.

59. By charging Astra Veda an effective interest rate in excess of 25% A.P.R., Defendants violated Section 190.40 of the New York Penal Code, a class E felony, which loans in violation of this statute are void *ab initio*, thus, there is no legally enforceable contract between the parties.

60. By collecting unlawful debts from Astra Veda in excess of twice the maximum enforceable rate, and by conspiring to do so, Defendants violated RICO, 18 U.S.C. § 1962 (c) and (d).

61. Defendants have unjustly retained the benefits of having violated both state usury laws and federal RICO, at the expense of Astra Veda and its stockholders.

62. As a result of the foregoing, Defendants have been unjustly enriched.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Astra Veda demands judgment in its favor against Defendants, jointly and severally, and seeks an Order from the Court:

a) Declaring each of the Agreements between Plaintiff and Defendants to be criminally usurious, and therefore, in violation of N.Y. Penal Law § 190.40;

b) Finding that defendants charged an interest rate more than double allowed under state law, in violation of RICO 18 U.S.C. § 1962;

c) Awarding Plaintiff treble damages;

d) Awarding Plaintiff compensatory, direct, and consequential damages, including prejudgment interest, in an amount to be determined at a hearing;

e) Requiring Defendants to pay Plaintiff's attorney's fees and costs; and

f) Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues properly so tried.

DATED: August 26, 2022                    Respectfully submitted,

                                                    **THE BASILE LAW FIRM P.C.**

                                                    By:*/s/ Mark R. Basile, Esq.*
                                                    MARK R. BASILE, ESQ.

390 North Broadway, Suite 140
Jericho, NY 11753
Tel.:   (516) 455-1500
Fax:   (631) 498-0748
Email: mark@thebasilelawfirm.com

***Attorneys for Plaintiff Astra Veda Corporation***